FILED

JUN 1 7 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUN 16 2004

KENNETH S. GARDNER, CLERK
PS REP. - TCR

| | | |
|---|---|---|
| HOME VENTILATING INSTITUTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 1898 |
| v. | ) | Judge Joan H. Lefkow |
| | ) | Magistrate Judge Marvin C. Ashman |
| AIR MOVEMENT AND CONTROL | ) | |
| ASSOCIATION INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY

Plaintiff Home Ventilating Institute, Inc. ("HVI") and putative third-party defendants Mark S. Hallett, Don T. Stevens, Ola Wettergren, David W. Wolbrink and John Harper (the "Third-Party Defendants"), respectfully file this Opposition to the motion of defendant Air Movement Control Association, International, Inc.'s ("AMCA") to disqualify Jed Mandel and the law firm of Neal, Gerber & Eisenberg LLP ("NG&E") as counsel for HVI and the Third-Party Defendants in these proceedings.

In its motion, AMCA asserts that Mr. Mandel's prior representation of AMCA disqualifies him and NG&E from further representation of HVI and the Third-Party Defendants in this matter. However, as set forth more fully below as well as in the supporting affidavit of Mr. Jed Mandel submitted herewith, AMCA does not and cannot satisfy the "substantial similarity" test employed by the Seventh Circuit in considering motions to disqualify. In fact, nearly all of the purported factual bases for AMCA's Motion to Disqualify hinge on the self-serving declaration of its current Executive Director, who was not employed by AMCA during the time period at issue, and who has no first-hand knowledge of the events that AMCA claims support disqualification. Rather, as set forth in the affidavit of Mr. Mandel, the *only* affiant who was involved in

the events at issue, his prior representation of AMCA was constrained to several discreet matters that are not related to the subject matter of the instant litigation. In addition, Mr. Mandel never obtained any confidential information in the course of his prior representation of AMCA that is relevant to the instant suit. Accordingly, for these reasons, as well as for those set forth more fully below, no conflict exists between Mr. Mandel's prior representation of AMCA and NG&E's current representation of HVI and the Third-Party Defendants, and AMCA's Motion to Disqualify should be denied.

## I.   FACTUAL BACKGROUND

### A.   Procedural Background

On March 12, 2004, HVI, through its long-time counsel, NG&E, filed its multi-count complaint against its former operational management company, AMCA (the "Complaint"), seeking, among other relief, a declaration that no "de facto merger" of HVI and AMCA ever occurred and that HVI is a separate and distinct legal entity.[1] On April 1, 2004, AMCA filed an Answer denying most of the material allegations in HVI's Complaint.

On April 8, 2004, AMCA filed what purports to be a third-party complaint against the Third-Party Defendants alleging that they engaged "in a civil conspiracy to tortuously interfere with and disrupt the existing relationships between AMCA and the members of AMCA's HVI Division." (Third-Party Complaint at ¶ 15.) AMCA also asserts in its third-party complaint that a "de facto merger" occurred between AMCA and HVI

---

[1]   HVI's Complaint also asserts a variety of other claims, namely: breach of fiduciary duty (Count II); claims for an accounting (Count III) as well as for the imposition of a constructive trust (Count IV); tortious interference with prospective economic advantage (Count V); trademark infringement and unfair competition (Count VI); trademark dilution (Count VII); violations of the Illinois Deceptive Trade Practices Act (Count VIII); violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count IX); and Conversion (Count X).

2

occurred in or around August 1985, and that HVI has since that time operated solely as a "fully owned Division of AMCA."[2] (Third-Party Complaint at ¶ 1.) On April 23, 2004, the Third-Party Defendants, who are also represented by NG&E, filed a motion to dismiss AMCA's third-party complaint on the ground that it is improper under Rule 14 of the Federal Rules of Civil Procedure. On April 29, 2004, this Court set a briefing schedule on the Third-Party Defendant's motion to dismiss and set a hearing concerning that motion for May 27, 2004.[3]

Late in the afternoon on May 26th, AMCA served HVI and the Third-Party Defendants with its Motion to Disqualify, in which AMCA asserts that Mr. Mandel and NG&E should be disqualified from further representation of HVI and the Third-Party Defendants in this matter as a result of "Mr. Mandel's prior representation of AMCA in the time period surrounding the merger between AMCA and HVI" and "[NG&E's] representation of AMCA in connection with the registration of certain trademarks that are at issue in this action." (Motion to Disqualify at ¶ 1.)

**B.    The Scope of Mr. Mandel's Prior Representation of AMCA.**

Beginning sometime in the early 1980s, Mr. Mandel became the primary attorney at the Jenner & Block firm providing legal counsel to HVI. (See Affidavit of Jed R. Mandel ("Mandel Affidavit"), attached hereto as Exhibit A at ¶ 4.)[4] In early 1984, the management firm that had been providing operational management services to HVI

---

[2]    As set forth more fully in its Complaint, HVI vigorously denies that it ever merged with AMCA, and maintains that it is, and has always been, a separate and distinct legal entity.

[3]    The Motion to Dismiss was fully briefed when the parties appeared on May 27th.

[4]    From 1977 through December 1984, Mr. Mandel was an associate at the Chicago law firm of Jenner & Block, and from 1985 through March 1989, he was a partner at that firm. (Mandel Affidavit at ¶3.) In March 1989, Mr. Mandel left Jenner & Block and joined Neal, Gerber & Eisenberg. (Id. at ¶ 20.)

announced that it no longer intended to provide such services, and HVI accordingly began a search for a new operational management firm. (Id. at ¶ 5.)

As part of its management search process, HVI contacted AMCA. (Id. at ¶ 6.) Mr. Mandel had had no contact with AMCA prior to HVI's search for a new management firm, and his only contact with AMCA during HVI's search was as legal counsel to HVI. (Id. at ¶ 6.) In or around April 1984, HVI decided to enlist AMCA to provide HVI with association management services, but that decision was not fully implemented until in or around Summer 1985. (Id.)

In or around June 1985, AMCA's board of directors moved to terminate their current counsel, C.R. Sprowl, and to negotiate with Jenner & Block to become AMCA's legal counsel, even though the board knew that Jenner & Block was already outside legal counsel for HVI, and in particular, that Mr. Mandel had represented HVI in the past and was continuing to do so. (Id. at ¶ 8; see also Motion to Disqualify at Exhibit 6.) Underscoring this point, Mr. Mandel advised Edward A. Cruse, AMCA's Executive Vice-President at the time, that Jenner & Block would continue to represent HVI, and that it would not represent AMCA, unless HVI did not object to such representation. (Id. at ¶ 9.)[5]

Mr. Mandel did not begin his limited representation of AMCA until October 1985, which was after HVI finalized its operational management relationship with AMCA and had physically moved its operations to AMCA's location. (Id. at ¶¶ 10-11.) (Emphasis added.) During the time he provided legal services to AMCA, Mr. Mandel's

---

[5]    At the time that AMCA first sought to establish a relationship with Jenner & Block, Mr. Mandel informed HVI that AMCA intended to use Jenner & Block for certain legal services provided that HVI did not object. (Mandel Declaration at ¶ 9.) HVI never objected to Mr. Mandel's limited representation of AMCA.

"representation" of AMCA remained narrow in scope, and never developed into anything more than providing discrete advice on a handful of specific questions posed by AMCA's staff. (Id. at ¶ 12.) [1]    These matters included:

(i)     legislative updates concerning association-related matters;

(ii)    reviewing safety labels developed by several of AMCA's Canadian members to assess general liability issues associated with such labels;

(iii)   reviewing draft disclaimers to be used on connection with AMCA's "Publication 2.5" as well as one to be used in connection with a Fan Application Manual;

(iv)    providing general information concerning the substance and procedures involved in applying for export trade certificates of review issued by the United States Department of Commerce;

(v)     reviewing specific paragraphs of AMCA's Registered Laboratory Program to determine whether a specific member was in compliance; and

(vi)    advising AMCA on topics that could be discussed at a Traffic Council Meeting without running afoul of antitrust laws.

(Mandel Affidavit at ¶ 12; see also Motion to Disqualify at Exhibit 13.)

Mr. Mandel never served as "general counsel" to AMCA and was never asked to provide general corporate or association legal services. (Mandel Affidavit at ¶ 13.) In fact, during the time period that he provided discrete legal advice to AMCA, Mr. Mandel never met with AMCA's Executive Committee or Board of Directors, nor was he ever provided with access to AMCA's internal financial or general corporate documentation and information, or to AMCA's meeting notices and minutes (Id.) AMCA also did not provide Mr. Mandel with general information on AMCA, its relationship with its Divisions, its corporate governance, strategic planning, business development plans,

budget and finances, personnel matters, or concerning any other such matters. (Id. at ¶ 14.)

None of the issues with respect to which Mr. Mandel provided AMCA discrete advice related in any way to HVI, to the relationship between HVI and AMCA, to operational management services provided by AMCA to HVI, or to AMCA's business or strategic plans relating to any services provided to HVI. (Id. at ¶ 15.) More specific to the subject matter of the instant suit, at no time was Mr. Mandel ever consulted by AMCA, nor did he ever advise AMCA, concerning the operational management services AMCA provided to the purported "HVI Division." (Id.) Moreover, at no time was Mr. Mandel ever consulted by AMCA, nor did Mr. Mandel ever advise AMCA, concerning any alleged "merger" or "merger"-related activities. (Id.)

Sometime in 1985, Mr. Mandel was asked by HVI, on its own behalf, to compare HVI's bylaws with those of AMCA and to advise HVI of any conflicts between the respective sets of bylaws. (Id. at ¶ 7.) In his capacity as HVI's counsel, and solely on behalf of HVI, Mr. Mandel reviewed (i) the appropriateness and legality of procedures to be followed by HVI under its bylaws and in accordance with the laws of the State of New York, as well as (ii) the governing law for HVI as a separate, independent corporation that was not governed by AMCA's bylaws or the laws under which AMCA was incorporated. (Id. at ¶ 17.) However, AMCA never asked Mr. Mandel to provide it with advice concerning the process by which HVI or the so-called "HVI Division" should or could approve a letter ballot, and he did not attend the April 1986 AMCA Midyear meeting at which the letter ballot approval item was slated for discussion. (Id. at ¶ 16.)

Apart from the legal advice Mr. Mandel provided on the narrow questions posed by AMCA staff members, from 1985 to 1989 Mr. Mandel also attended several AMCA annual business meetings as a speaker and, at AMCA's request, presented on items of general interest, such as products liability, director liability and legislative updates on issues affecting associations. (Id. at ¶ 18; see also Motion to Disqualify at Exhibits 10, 11, 14, 16.) Mr. Mandel was not listed in the programs for those meetings as AMCA's attorney, nor was he introduced as such to the attendees. (Id.)

In contrast to Mr. Mandel's tangential involvement with AMCA, Mr. Mandel's representation of HVI has been far more extensive. In his representation of HVI from before 1985 through 1989, Mr. Mandel was intimately involved in all phases of HVI's operation and activities. (Mandel Affidavit at ¶ 19.) Both HVI's staff and its members contacted Mr. Mandel directly. (Id.) In addition, Mr. Mandel regularly attended meetings of HVI's Executive Committee and Board of Directors. (Id.) In furtherance of his representation of HVI, Mr. Mandel also was privy to and directly involved with HVI strategic planning, governance, and business decisions. (Id.)

In March 1989, Mr. Mandel left Jenner & Block and joined NG&E, after which HVI changed its legal representation from Jenner & Block to NG&E. (Id. at ¶ 20.) Since that time, Mr. Mandel's direct involvement with HVI has become significantly more limited, though he has continued, from time to time, to render legal services to HVI on issues related primarily to trademark prosecution matters and other incidental questions that HVI members or staff have raised. (Id.) All such NG&E legal services provided to HVI were billed directly to, and paid by, HVI. (Id.) In particular, the legal fees

associated with the prosecution of certain trademarks at issue in this suit, which are owned by HVI, were incurred by and paid by HVI. (Id.)

Shortly after joining NG&E, Mr. Mandel notified AMCA that they would have to change law firms if they were to continue to use him for discrete legal questions, and opened a file in the event that AMCA continued to call on him at his new firm for legal services from time to time (Id. at ¶ 21.) However, in or around Fall 1989, Peter Hanly, AMCA's Executive Vice-President at that time, informed Mr. Mandel that AMCA would no longer be using him or NG&E in any capacity. (Id. at ¶ 22.) Thus, Mr. Mandel gave very intermittent legal advice to AMCA from Fall 1985 through Fall 1989 on limited matters that are unrelated to the subject matter of the pending suit between HVI and AMCA. (Id. at ¶ 22.)

Aside from the subject matter of the present litigation, which arose approximately fourteen years after Mr. Mandel ceased providing any legal services to AMCA, HVI and AMCA have not had divergent interests or been adverse parties in any transaction or dispute. (Id. at ¶ 24.) When the current dispute with AMCA arose in 2003, Mr. Mandel became intimately involved in representing HVI and in negotiating with AMCA's counsel to resolve the matter without having to resort to litigation.[6] (Id. at ¶ 26.) After those efforts proved to be unsuccessful, however, HVI decided to file the above-captioned suit. (Id.) While Mr. Mandel has continued to actively participate in this matter, other NG&E attorneys who are proficient in litigation are handling the litigation aspects of this dispute and are therefore the attorneys who have filed personal appearances in this matter. (Id.)

---

[6]     AMCA never asserted any conflict at that time.

8

Because the subject matter of the current litigation between HVI and AMCA is unrelated to any of the discrete issues on which Mr. Mandel advised AMCA, Mr. Mandel did not obtain -- and in fact, could not have obtained – confidential information that is relevant to the parties' current dispute. (Id. at ¶ 27.) Accordingly, no conflict exists and there has been no reason to institute screening mechanisms shielding Mr. Mandel from participation in this suit. (Id.) Indeed, such screening mechanisms were deemed to be unnecessary given the very limited and entirely unrelated nature of Mr. Mandel's previous representation of AMCA.

## II. **ARGUMENT**

### A. **Motions to Disqualify Can Be Granted Only Where the Past and Present Representations Are "Substantially Similar" and the Challenged Attorney Received Confidences Relevant to the Current Dispute.**

It is well settled that attorney disqualification is "a drastic measure" which courts should "not impose except when absolutely necessary." Robin v. Doctors Officenters Corp., et al., 686 F.Supp. 199, 205 (N.D. Ill. 1988) (denying motion to disqualify) (quoting Sheissle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983)). This is because "[i]n addition to creating unnecessary delay, disqualification often deprives a party of its chosen advisor." Guillen v. City of Chicago, 956 F.Supp. 1416, 1421 (N.D. Ill. 1997) (denying motion to disqualify). Moreover, it is well-recognized that that "motions for disqualification should be viewed with extreme caution for they can be misused as techniques of harassment." Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 722 (7th Cir. 1982) (reversing lower court's order disqualifying counsel).

9

In assessing the propriety of a motion to disqualify, courts in the Seventh Circuit apply a three-prong test to determine whether the subject matter of the former representation is "substantially similar" by first making:

> ... a factual reconstruction of the scope of the prior representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

Steadfast Ins. Co. v. Auto Marketing Network, Inc., No. 97 C 5696, 2003 WL 22433086, at * 5 (J. Lefkow) (N.D. Ill. Oct. 27, 2003) (quoting Westinghouse Elec. Co. v. Gulf Oil, Corp., 588 F.2d 221, 225 (7th Cir. 1978)).[7]   If the subject matter of the former representation is not substantially related to the subject matter of the present representation, then no conflict exists and disqualification is not warranted. See, e.g., Steadfast Ins. Co., 2003 WL 22433086 at * 7 (no substantial relationship between prior representation involving proposed financial restructuring and pending case involving bad faith insurance litigation); see also Macklem v. Sneddon, No. 96 C 2324, 1996 U.S. Dist. LEXIS 18455, at *14 (J. Lefkow) (N.D. Ill. Dec. 9, 1996) (recommending denial of motion to disqualify where prior representation relating to liquidating certain corporate positions was unrelated to subsequent representation concerning the terms of a personal loan).

However, if, and only if, the movant meets its heavy burden and establishes that a substantial relationship exists, a rebuttable "presumption arises that the attorney or firm

---

[7]   "Relevance must be gauged by the violations alleged in the complaint and an assessment of the evidence useful in establishing those allegations." Westinghouse, 588 F.2d at 226.

in fact received confidential information relevant to the current litigation." Id. at *10. However, if the challenged attorney or firm "clearly and effectively" demonstrates that it did not receive confidential information relevant to the current litigation, including through the submission of uncontroverted affidavits, the presumption is overcome and the motion to disqualify must fail. See Freeman, 689 F.2d at 723 (where attorney demonstrates that he had no knowledge of client confidences related to the present litigation, disqualification would be "unnecessary" and could "reasonably be regarded as an abuse of discretion"); see also Macklem, 1996 U.S. Dist. LEXIS 18455, at *10 (recommending denial of motion to disqualify).[8]

**B.** **AMCA Has Not Satisfied Its Burden Under the Substantial Similarity Test And Its Motion to Disqualify Should Therefore Be Denied.**

The Mandel Affidavit, which is supported by AMCA's own exhibits submitted with its Motion to Disqualify, confirms that no conflict exists because the subject matter of Mr. Mandel's prior representation of AMCA is not substantially related to the subject matter of the instant litigation. Accordingly, because AMCA cannot satisfy any of the prongs of the substantial similarity test, its Motion to Disqualify must fail.

> 1. The declaration of Barbara Morrison should be disregarded because she has no personal knowledge of the statement made therein.

In support of its Motion to Disqualify, AMCA did not submit any affidavits from individuals who were involved with AMCA when Mr. Mandel provided very limited

---

[8]    While the burden on the challenged attorney to overcome the presumption once it arises may seem strict "[i]t will not do to make the presumption of confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high. This is particularly true where, as here, the attorney must prove a negative, which is always a difficult burden to meet." Freeman, 689 F.2d at 723 (quoting Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures, 224 F.2d 824, 827 (2d Cir. 1955), cert. denied, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956)).

legal services to it. In an attempt to circumvent this deficiency, AMCA relies almost exclusively on the un-notarized declaration of its current Executive Director, Ms. Barbara Morrison, who joined AMCA in April 2001, nearly twelve years <u>after</u> Mr. Mandel ceased providing any legal services to AMCA (the "Morrison Declaration").[9] (<u>See</u> AMCA press release, attached hereto as Exhibit B.) Because Ms. Morrison was not affiliated with AMCA at the time of the events at issue, she is not competent to testify as to the balance of the statements made in her declaration that are not based on her personal knowledge, and which can be based only on hearsay. The Morrison Declaration therefore does not and cannot support AMCA's Motion to Disqualify and should be stricken. <u>Adusimilli v. City of Chicago</u>, 164 F.3d 353, 359 (7th Cir. 1998) (affidavit may be stricken if it lacks foundation and concerns matters not within the affiant's personal knowledge).

> 2.  The scope of Mr. Mandel's prior representation of AMCA was limited and did not cover the subject matter of the present <u>litigation</u>.

AMCA's self-serving assertions aside, as set forth *supra* at page 5 and in Paragraph 12 of the Mandel Affidavit, Mr. Mandel's representation of AMCA was limited to a handful of isolated issues which form the factual scope of Mr. Mandel's limited representation of AMCA. By contrast, the current suit involves a variety of claims arising out of the operational management services provided by AMCA to HVI. The factual scope of Mr. Mandel's representation of AMCA is manifestly unrelated to HVI or the relationship between HVI and AMCA, nor did he provide AMCA with any

---

[9]  Indeed, the Morrison Declaration is conspicuously lacking in specificity as to when Ms. Morrison joined AMCA, as well as the bases for the statements contained therein.[9] (<u>See</u> the Morrison Declaration, attached to the Motion to Disqualify as Exhibit A at ¶ 1.)

legal counsel with respect to HVI's trademarks.[10] (Mandel Affidavit at ¶¶ 19-20.) In addition, Mr. Mandel was never asked to provide, nor did he provide, any advice to AMCA relating to the operational management services provided by AMCA to HVI or any alleged "merger" or "merger-related" activities.[11] (Mandel Affidavit at ¶ 15.) Nor did Mr. Mandel serve as "general counsel" or provide AMCA with general corporate or association legal services. (Mandel Affidavit at ¶ 13.)[12] The scope of the prior representation therefore does not cover the subject matter of the pending action.

       3.     Any confidential information received by Mr. Mandel is limited to the scope of the prior representation and is irrelevant to this suit.

Under the substantial similarity test, it is only reasonable to infer that Mr. Mandel was given confidential information from AMCA with respect to the limited and discrete issues on which AMCA sought his legal advice. See, generally, Steadfast Ins. Co., 2003 WL 22433086, at *7. Given the specific and isolated subject matter of the prior representation, Mr. Mandel simply would not have been privy to, and indeed did not have access to nor otherwise receive, any confidential information relating to AMCA's relationship with HVI or the operational management services provided by AMCA to HVI. (Mandel Affidavit at ¶ 15.) Mr. Mandel did not even have access to or receive any

---

[10]    AMCA's claims aside, the letters attached as Exhibits 17 and 18 to AMCA's Motion are correspondence between NG&E and its client, HVI, concerning certain trademark registrations applied for and owned in the name of HVI. (See Motion to Disqualify at Exhibit 18.) Neither Mr. Mandel nor NG&E represented AMCA in trademark prosecution matters relating to HVI's trademarks. (See, generally, Mandel Affidavit at ¶¶ 19-20.)

[11]    Indeed, Mr. Mandel's limited representation of AMCA did not even begin until October 1985, two months after AMCA alleges that HVI and AMCA "merged." (See Mandel Affidavit at ¶¶ 10-11.)

[12]    Even if Mr. Mandel's speaking engagements at AMCA meetings on topics of general interest to associations qualified as part of his limited "representation" of AMCA, those topics are also unrelated to the instant litigation. (Mandel Affidavit at ¶ 18; see also Motion to Disqualify at Exhibits 10, 11, 14, 16.)

information of AMCA's meeting notices and minutes, or any information relating to AMCA's relationship with its divisions, its corporate governance, strategic planning, business development plans, personnel matters, budgets or other internal financial information, or AMCA's general corporate information. (Mandel Affidavit at ¶¶ 13-14.) Indeed, the only confidences Mr. Mandel would have obtained in the course of addressing the narrow issues presented to him by AMCA would have related to the specific facts of those matters, which are completely irrelevant to the claims in this suit. (Mandel Affidavit at ¶¶ 12, 25, 27.)

Thus, the *only* affidavit submitted by an individual who was involved in the events at issue, as well as several of AMCA's own exhibits, confirm that the subject matter of Mr. Mandel's prior representation of AMCA is not substantially related to the subject matter of the instant litigation.[13] In light of the foregoing, AMCA has failed to raise facts sufficient to create a presumption that Mr. Mandel and his present firm, NG&E, received confidential information related to the instant suit, and its Motion to Disqualify therefore should be denied. See Macklem, 1996 U.S. Dist. LEXIS 18455, at *14 (recommending denial of motion to disqualify where prior representation relating to liquidating certain corporate positions was unrelated to subsequent representation concerning the terms of a personal loan).

---

[13]     Even intertwined "relationships between parties and their business dealings do not justify disqualification unless the factual scope of both the prior and current representations ... is substantially related."     Macklem, 1996 U.S. Dist. LEXIS 18455, at *12 (citing Westinghouse, 580 F.2d at 1322 (no substantial relationship between previous representation of a corporation regarding copper and potash industry and subsequently-filed suit against former client concerning alleged price fixing in uranium industry) and Continental Holdings, Inc. v. United States Can Co., 1996 WL 385346, at * 3 (N.D. Ill. July 3, 1996) (no substantial relationship between previously-drafted settlement agreement drafted in former joint representation of parties and subsequent litigation between the corporations where the settlement agreement and issues from former litigation were not relevant to current suit)).

C.    **Even if the Matters Are Substantially Related, Any Presumption That Mr. Mandel Received Confidential Information Relevant to This Suit Has Been Rebutted.**

Even if the subject matter of the prior and current representations could somehow be construed to be substantially similar, the Mandel Affidavit, which is un-refuted by any individual with personal knowledge of the relevant events, "clearly and effectively" demonstrates that Mr. Mandel and NG&E did not receive confidential information relevant to the current litigation and therefore successfully rebuts any presumption that Mr. Mandel or NG&E received confidential information relevant to this suit. (See, e.g., Mandel Affidavit at ¶¶ 25, 27). See also Continental, 1996 WL 385346, at * 3 (presumption overcome by affidavit stating that attorney did not receive confidential information during prior representation). For this reason as well, the Motion to Disqualify should be denied. Id. at *3 (denying motion to disqualify.)

III.    **CONCLUSION**

WHEREFORE, for the reasons set forth herein, Home Ventilating Institute, Inc. and the putative Third-Party Defendants respectfully request that this Court enter an Order denying AMCA's Motion to Disqualify Jed Mandel and Neal, Gerber & Eisenberg and granting whatever further relief it deems proper.

Respectfully submitted,

Dated:  June 16, 2004

One of the Attorneys for Plaintiff and the
putative Third-Party Defendants

Robert Radasevich (ARDC # 6180383)
Lee J. Eulgen (ARDC # 6242858)
Sarah E. Smith (ARDC #6273071)
NEAL GERBER & EISENBERG LLP
2 North LaSalle Street, Suite 2200
Chicago, Illinois 60602
(312) 269-8000

# *See Case File For Exhibits*