# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1898 | **DATE** | 8/30/2004 |
| **CASE TITLE** | Home Ventilating Institute, Inc. vs. Air Movement and Control Association International, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, the third-party defendants' motion [#18] to dismiss is granted and the motion [#22] to disqualify Jed Mandel and the law firm of Neal Gerber & Eisenberg, LLP is also granted. Status hearing is set for 9/23/04 at 9:30 a.m. at which time Home Ventilating Institute, Inc. should be prepared to appear by substitute counsel.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 3 1 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | [signature] | 30 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 8/30/2004 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOME VENTILATING INSTITUTE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 04 C 1898 |
| ) | Judge Joan H. Lefkow |
| AIR MOVEMENT AND CONTROL ) | |
| ASSOCIATION INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| AIR MOVEMENT AND CONTROL ) | |
| ASSOCIATION INTERNATIONAL, INC., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MARK S. HALLETT, DON T. STEVENS, ) | |
| OLA WETTERGREN, DAVID W. ) | |
| WOLBRINK, AND JOHN HARPER, ) | |
| ) | |
| Third-Party Defendants. ) | |

DOCKETED
AUG 31 2004

## MEMORANDUM OPINION AND ORDER

On March 12, 2004, plaintiff, Home Ventilating Institute, Inc. ("HVI"), filed this action against defendant, Air Movement and Control Association International, Inc. ("AMCA"). In Count I of its Complaint, HVI seeks a declaration that it is a separate and independent legal entity and that no "de facto merger" between HVI and AMCA has occurred. HVI also asserts a number of other claims, including (1) breach of fiduciary duty (Count II); (2) a request for an accounting (Count III); (3) a constructive trust (Count IV); (4) tortious interference (Count V); (5) trademark infringement and unfair competition (Count VI); (6) trademark dilution (Count VII); (7) violation

of the Illinois Deceptive Trade Practices Act (Count XIII); (8) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IX); and (9) Conversion (Count X). HVI alleges that this court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367.

On April 8, 2004, defendant/third-party plaintiff AMCA filed a Third Party-Complaint against third-party defendants Mark S. Hallett, Don T. Stevens, Ola Wettergren, David W. Wolbrink, and John Harper (collectively "third-party defendants"). The Third-Party Complaint alleges that the third-party defendants engaged in a civil conspiracy to tortiously interfere with and disrupt the existing relationships between AMCA and the members of AMCA's HVI Division. The Third-Party Complaint alleges that this court's jurisdiction is invoked because the allegations are transactionally related to the claim for relief against AMCA and because diversity jurisdiction is invoked pursuant to 28 U.S.C. § 1332.

Currently pending before the court are two motions. The first is the third-party defendants' motion to dismiss the Third-Party Complaint. The second motion is AMCA's motion to disqualify the attorneys representing HVI in this action. For the reasons set forth below, the third-party defendants' motion to dismiss is granted and the defendants' motion for disqualification is also granted.

## BACKGROUND

AMCA is a trade association comprised of air movement and control equipment manufacturers. Its business activities include the development of standards for the ventilation industry, development and administration of a Certified Rating Program for ventilation equipment, accreditation of testing laboratories, and providing meetings and other services to its members companies. HVI alleges that it is a trade association for businesses that are engaged in

manufacturing, marketing and selling residential ventilation products in North America. Through this action HVI seeks a declaratory judgment that it is a separate and distinct legal entity and not a part of AMCA. The third-party defendants are individuals who hold executive positions in various companies that are members of HVI. AMCA's Third-Party Complaint alleges that the third-party defendants (1) unlawfully obtained copies of AMCA's confidential business records, (2) interfered with AMCA's electronic mail and website, and (3) interfered with AMCA's collection of dues and assessments from HVI members.

## DISCUSSION

### A. Motion to Dismiss Third-Party Complaint

The third-party defendants primary ground for dismissal of the Third-Party Complaint is because it does not conform to the dictates of Federal Rule of Civil Procedure 14(a). Rule 14(a) states that "a defending party, as a third-party plaintiff may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.*" (Emphasis added).

The third-party defendants argue that AMCA's Third-Party Complaint must fail because AMCA does not seek indemnity or contribution against the third-party defendants or allege that they are liable to AMCA for all or part of HVI's claim against AMCA. Instead, the third-party defendants argue that AMCA's Third-Party Complaint seeks compensatory and punitive damages for AMCA's alleged injuries resulting from the third-party defendants' purported civil conspiracy.

In response, AMCA states that part of the relief it seeks under the Third-Party Complaint includes damages that it may be liable for by virtue of the underlying suit. AMCA asserts that if

3

liability is imposed against it and in favor of HVI, it will only be as a result of certain tortious actions the third-party defendants are alleged to have taken part in. As the third-party defendants point out, however, there are only two possible outcomes in the underlying case between HVI and AMCA, and neither result in a scenario in which AMCA's liability to HVI stems from the third-party defendants' actions. If HVI succeeds in proving that it is a separate legal entity, then the third-party defendants could not have conspired to cause HVI to wrongfully separate from AMCA. AMCA does not explain how the court could find on the one hand that HVI is a separate legal entity and on the other that it achieved that status on the basis of an illegal civil conspiracy. AMCA essentially argues that if HVI is a separate legal entity, it became so due to the civil conspiracy the third-party defendants took part in. There is no allegations suggesting such a belief.

The second possible outcome in the underlying Complaint is that AMCA prevails and, therefore, HVI would not be a separate legal entity. If that result comes to pass, and because HVI would have lost its claims, then the third-party defendants would clearly not be liable to AMCA for HVI's claims. Thus, as is apparent, there is no basis here for an attempt to implead the third-party defendants. This is not to say that AMCA has no causes of actions against the third-party defendants. But those causes of action, if any, are not derivative of the liability of AMCA to HVI.[1]

---

[1] AMCA makes two additional arguments for the inclusion of the third-party defendants in this case. First, it asserts that the third-party defendants are the real parties in interest under Rule 17(a) ("every action shall be prosecuted in the name of the real party in interest") and, therefore, must be added to this suit. AMCA's basis for this conclusion is its view that HVI has existed only as a division of AMCA since their merger in 1985. As the third-party defendants point out, this would assume at the pleading stage the very issue being disputed in the underlying complaint: whether HIV exists as a separate legal entity. Moreover, the Third-Party Complaint does not seek to hold the third-party defendants liable for the acts of HVI but instead seeks damages for torts they allegedly committed
(continued...)

In their reply brief the third-party defendants have requested fees and costs pursuant to Rule 11. Rule 11(c)(1) states that "[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)." Fed. R. Civ. P. 11(c)(1)(A). The court will consider this request only if properly made by motion.

**B.     Motion to Disqualify**

Also before the court is AMCA's motion to disqualify Jed Mandel and the law firm of Neal Gerber & Eisenberg, LLP ("Neal Gerber") from representing HVI in this action. AMCA argues that any representation by Mandel and Neal Gerber would be in violation of this District's Local Rules. Local Rule 83.51.9(a) states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related* matter in which the person's interest are materially adverse to the interests of the former client unless the former client consents after disclosure." (Emphasis added.) This prohibition is broadened by Local Rule 83.51.10(a), which states that "[n]o lawyer associated with a firm shall represent a client when the lawyer knows or reasonably should know that another lawyer associated with that firm would be prohibited from doing so by . . . LR 83.51.9."

To determine whether an action is "substantially related" the court looks into "the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought." *Westinghouse*

---

[1](...continued)
against AMCA. Accordingly, for these reasons this argument is rejected. AMCA also argues that the third-party defendants are parties necessary for just adjudication under Rule 19, but AMCA fails to explain exactly why complete relief cannot be accorded unless the third-party defendants are joined. The court is not otherwise persuaded. Thus, this argument is also rejected.

*Elec. Corp.* v. *Gulf Oil Corp.*, 558 F.2d 221, 224 (7th Cir. 1978). The court is not to inquire into whether confidences were actually disclosed. *See id.* ("[I]t is not appropriate for the court to inquire into whether actual confidences were disclosed."); *Analytica Inc.* v. *NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983) (noting that it is "irrelevant whether [the attorney] actually obtained such [confidential] information and used it against client."); *Donohoe* v. *Consolidated Operating & Prod. Corp.*, 691 F. Supp. 109, 112 (N.D. Ill. 1988) ("[B]ecause a client has the right to preserve his or her confidences, and because that right would be lost if the client had to reveal the confidences to prove any link in that chain, courts do not demand proof of actual flow of information."). Rather, the "substantially related" tests focuses on whether a lawyer "*could* have obtained confidential information in the first representation that would have been relevant in the second." *Analytica*, 708 F.2d at 1266 (emphasis added). Whether confidential information could have been disclosed requires a three step inquiry:

> Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Westinghouse*, 588 F.2d at 225. "Relevance must be gauged by the violations alleged in the complaint and assessment of the evidence useful in establishing those allegations." *Id.* at 226.

When a substantial relationship is found to exist there is a presumption of shared confidences. *See LaSalle Nat. Bank* v. *County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983). The presumption may be rebutted in circumstances "where a member or associate of a law firm (or government legal department) changes jobs, and later he or his new firm is retained by an

adversary of a client of his former firm." *Analytica*, 708 F.2d at 1267. In that instance, an attorney may rebut the presumption of shared confidences by (1) "'clearly and effectively' demonstrating that he had no knowledge of the information, confidences and/or secrets related by the client in the prior representation," *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983); and (2) by demonstrating that "specific institutional mechanisms, screens or 'Chinese walls,' have been employed to prevent any flow of confidential information from the 'tainted' lawyer to any other members of his present firm." *Van Jackson v. Check' N Go of Illinois, Inc.*, 114 F. Supp. 731, 732 (N.D. Ill. 2003) (citing *Schiessle*, 717 F.2d at 421). The presumption of shared confidences is irrebuttable, however, in situations in which a firm itself changes sides. *See Analytica*, 708 F.2d at 1267.

The court will separate the legal representations alleged to warrant disqualification into two categories. First, the court will examine Mandel's representation of AMCA itself. Next, the court will consider the legal representation that Mandel avers was for HVI but which AMCA states was for it through its HVI Division.

1.  *Representation of AMCA*

Mandel admits that he represented AMCA itself in some capacity. This representation apparently began on May 30, 1985, when, as reflected in minutes of an AMCA meeting, AMCA and HVI agreed that AMCA would make a recommendation to its Board of Directors to retain Jenner & Block (where Mandel was previously employed) as its legal counsel. (*See* Morrison Decl., Ex. 5.) First, for clarity, the court notes that Mandel characterizes the so-called "merger" between AMCA and HVI at issue in this case as HVI's attempt to search for a new operational management firm. (Mandel Decl. ¶ 6.) Thus, advancing the same theory as HVI in this case,

Mandel states that HVI remained a separate entity from AMCA and, by and large, his representation was for HVI and not for AMCA. Mandel explains that when AMCA's Board of Directors attempted to engage his services through Jenner & Block, AMCA was aware that he had represented HVI in the past and was continuing to do so. (*Id.* at ¶ 9.) In fact, Mandel avers that he advised AMCA's then Executive Vice-President that Jenner & Block would continue to represent HVI and it would not represent AMCA unless HVI did not object to the representation. (*Id.*) He states that he informed HVI that AMCA intended to use Jenner & Block for certain legal services and HVI did not object. (*Id.*)

Mandel further states that he was never asked to provide any legal services to AMCA until after AMCA began to provide operational management services to HVI (or, depending on which side prevails, until after the so-called "merger"). (*Id.* at ¶ 10.) Mandel notes that, at Jenner & Block, he created a new client file and billing number specifically for AMCA which was separate from the file and billing number for HVI. (*Id.* at ¶ 11.) He states that this representation of AMCA remained narrow in scope and included (1) legislative updates concerning association-related matters; (2) reviewing safety labels developed by several of AMCA's Canadian members to assess general liability issues associated with such labels; (3) reviewing draft disclaimers to be used in connection with AMCA's "Publication 2.5" as well as one to be used in connection with a Fan Application Manual; (4) providing general information concerning the substance and procedures involved in applying for export trade certificates of review issued by the United States Department of Commerce; (5) reviewing specific paragraphs of AMCA's Registered Laboratory program to determine whether a specific member was in compliance; and (6) advising AMCA on topics that could be discussed at a specific Traffic

8

Counsel Meeting without running afoul of antitrust laws. (*Id.* at ¶ 12.) Mandel disputes that he served in a "general counsel" capacity for AMCA and states he never met with AMCA's Executive Committee or Board of Directors and never had access to its internal financial or general corporate documentation and information. (*Id.* at ¶ 13.) Specifically, Mandel states that he was never provided information on AMCA's relationships with its Divisions, its corporate governance, strategic planning, business development plans, budget finances or personnel matters. (*Id.* at ¶ 14.)

In 1989, after leaving Jenner & Block and joining Neal Gerber, Mandel states that HVI also changed its legal representation from Jenner & Block to Neal Gerber. (*Id.* at ¶ 20.) Mandel explains that after his move to Neal Gerber he informed AMCA that it would have to change law firms if it wished to still use him for legal questions. (*Id.* at ¶ 21.) He also opened a file for AMCA in the event they called him at Neal Gerber. (*Id.*) In or around fall 1989, AMCA's Executive Vice-President informed Mandel that AMCA would not be using Neal Gerber in any capacity. (*Id* at ¶ 22.) Thus, Mandel's representation of AMCA took place from fall 1985 through fall 1989. (*Id.*)

Considering, at this point, the representation of AMCA alone, the court is not persuaded that such representation mandates disqualification of Mandel and Neal Gerber. It is reasonable to infer that some confidential information was exchanged during this representation described above, but the court does not believe that such information would be relevant to the issues raised in the litigation here. Through this representation Mandel was not exposed to general information on AMCA's relationships with its Divisions, its corporate governance, strategic planning, business development plans, budget finances or personnel matters. Moreover, this

representation did not concern the so-called "merger" between AMCA and HVI or anything relating to HVI/AMCA's trademarks. Instead, the court agrees with Mandel's characterization as this representation being rather narrow in scope and unrelated to the issues relevant in this case. Thus, the court will not disqualify Mandel and Neal Gerber based on this representation of AMCA.

2. *Representation of the HVI Division of AMCA*

The difficult question in this case, which the parties do not agree on, is whether some of Mandel's legal representation described below was for HVI or for AMCA. The problem should be apparent from the parties' divergent views of this case. HVI seeks in this action a declaratory judgment that it is a separate legal entity, and Mandel states that he represented this separate legal entity and not AMCA. AMCA, on the other hand, argues that HVI is one of its divisions and that Mandel was, in fact, representing AMCA and could not have been representing a separate entity. Before tackling this issue, a factual reconstruction of Mandel's representation is necessary.

AMCA's evidence is supplied through minutes of meetings and other related documentary evidence, in conjunction with the declarations of John Meier (former President of AMCA) and Robert E. Harris (AMCA's Director of Finance). The minutes of the AMCA meetings show that on April 9, 1984, Mandel attended a meeting held between the executive committees of HVI and AMCA. (*See* Morrison Decl., Ex. 4.) AMCA represents that this meeting was to discuss a possible merger between the two organizations, although the minutes do not establish this asserted fact. Mandel appeared at this meeting as "Attorney for Home Ventilating Institute." (*Id.*) AMCA also submits a document created thereafter, on May 11,

10

1984, entitled "Merger of HVI and AMCA," in which AMCA states that it and HVI voted to approve a merger of the entities and that HVI would become a new division of AMCA effective August 1, 1985. (*Id.* at Exs. 1-3.) The new entity was referred to as the "Home Ventilating Institute Division."

On May 30, 1985, minutes of a meeting (referred to as an "AMCA/HVI Assimilation Review Meeting") state that AMCA and HVI agreed that AMCA would make a recommendation to its Board of Directors to retain Jenner & Block as its legal counsel. (*Id.* at Ex. 5.) Minutes from a June 19, 1985 "AMCA Executive Committee" meeting suggest that "[i]t was agreed that the first step would be to ask Jed Mandel to review both HVI and AMCA bylaws to resolve areas of conflict (if any) and report to staff as soon as possible." (*Id.* at Ex. 8.) Minutes from an October 15, 1985 "HVI Division of AMCA" meeting reflect that Mandel was present at the meeting and, under a heading marked "Report from Counsel," reads "Jed R. Mandell, Esq., then reported that AMCA had asked him to serve them as legal counsel and that he accepted." (*Id.* at Ex. 7.)

In minutes from an AMCA board meeting on February 11, 1987, one of the board members suggested that "we check with our attorney as to advantages of Delaware incorporation, or at least some bylaw amendment to protect outside directors." (*Id.* at Ex. 10.) The minutes then provide that "it was recommended that Jed Mandel be asked to attend and speak on Director's liability and the extent of a director's real vulnerability at the next Board meeting. It was further suggested that he could speak on product liability at the Midyear Meeting." (*Id.*)

AMCA also states that its Board of Directors requested and received Mandel's legal analysis of a "letter ballot" to be used in connection with the operation of AMCA's HVI

11

Division. (*Id.* at Ex. 9.) Moreover, in a May 13, 1987, letter from Dale Rammien (who is identified as Director of "Home Ventilating Institute Division of AMCA"), Mandel was asked to prepare and file corporate documents with the Illinois Secretary of State which related to the HVI division. (*Id.* at Ex. 12.)

Minutes from the 1988 annual meeting reflect that Mandel was present as part of the "Roll Call" of a meeting of the "AMCA HVI Division" and that he "periodically . . . sends bulletins and other information to staff." (*Id.* at Ex. 15.) Mandel also attended AMCA's Midyear Meeting in 1989 and spoke on the issue of "Washington Watch–What the 101st Congress is Gearing Up to Concern Manufacturers." (*Id.* at Ex. 16.) Also at this annual meeting, Mandel was again present at the "Roll Call" of the "HVI Division Meeting" and he "thanked the HVI Division for demonstrating their confidence in him by deciding to continue with his services as legal counsel for the HVI Division. Mr. Mandel identified his new firm as Neal Gerber Eisenberg & Lurie." (*Id.* at Ex. 16.)

AMCA supplements the minutes from these meetings with the affidavit of John Meier, former President of AMCA. Meier states that AMCA retained Mandel and his then law firm (Jenner & Block) as its legal counsel. (Meier Decl. ¶ 5.) Meier states that Mandel "advised AMCA on a wide variety of legal issues that arose, including legal issues relating to the merger and to the operation of the HVI Division of AMCA." (Meier Decl. ¶ 6.) Meier states that after July 1985, and continuing through 1987, Mandel was AMCA's "only attorney" and AMCA "relied exclusively on Mr. Mandel for all legal matters that arose, including implementing the merger of the two entities." (Meier Aff. ¶ 7.) Meier also avers that Mandel regularly attended

12

and provided legal advice at AMCA's annual and mid-year meetings, where AMCA finances, business plans and strategic operations were discussed. (*Id.*)

AMCA also relies on documentary evidence showing that Neal Gerber represented AMCA with respect to certain trademarks owned by its HVI Division. In January 2003, Tim Orris, AMCA's Interim Director of the HVI Division, contacted Lisa Stegink of Neal Gerber requesting legal advice with respect to the registration of federal trademarks. According to AMCA, Neal Gerber, acting on AMCA's behalf, prepared and filed these applications containing the HVI Division logo. (*Id.* at Ex. 17-18.) Neal Gerber invoiced AMCA for all these services rendered and AMCA paid these invoices, as evidenced by the declaration of AMCA's Director of Finance Robert Harris. (Harris Decl. ¶¶ 4-5.) Moreover, Harris further noted that HVI was not capable of paying the bill, even if the trademarks related to the HVI Division, because the HVI Division did not have separate and distinct financial records and bank accounts from AMCA. (*Id.* at ¶ 7.)

In response, Mandel states in his declaration that he began representing HVI sometime in the early 1980s when he was working at Jenner & Block. He states that during the time of the so-called "merger" between HVI and AMCA (which, as noted above, Mandel says was but HVI's attempt to search for a new operational management firm), he served as legal counsel only to HVI. (*Id.* at ¶ 6.) In response to the June 19, 1985 meeting minutes stating that he was asked to review AMCA's and HVI's bylaws, Mandel disputes that contention and claims he did not attend that meeting and that AMCA never asked him to review its bylaws. Instead, he suggests that he was asked by HVI, on its own behalf, to compare HVI's bylaws with those of AMCA and to advise HVI of any conflicts between the respective sets of bylaws. (*Id.* at ¶ 7.) Mandel states

that with regard to the "letter ballot," he was never asked to provide advice concerning the process by which HVI or the HVI Division could approve a letter ballot. (*Id.* at ¶ 16.)

Mandel explains that, after he moved to Neal Gerber, HVI changed its legal representation from Jenner & Block to Neal Gerber. (*Id.* at ¶ 20.) Since that time, Mandel states that he has rendered legal services to HVI from "time to time" including questions related to trademark prosecution matters (which are at issue in this case). (*Id.*) Mandel states that all such services were billed directly to, and paid by, HVI.[2]

After reviewing the above evidence, the court finds it unclear how the disqualification issue can be decided without addressing the underlying merits of the parties' dispute. For example, if the court were to say that there was sufficient evidence presented establishing that Mandel was representing HVI alone during this time, it would, necessarily, be opining on the merits of the underlying suit and be stating that HVI is a separate and distinct entity. The same is true if the court were to say that Mandel's representation was for AMCA as part of the HVI Division. In so concluding the court would be deciding at least in part that HVI is not a separate entity from AMCA, an issue which is at the center of the parties' dispute. In each instance, making such a conclusion at this stage of this case, without the benefit of briefing, is entirely problematic.

Despite the above issues, assuming that AMCA's underlying theory prevailed, the substantial relation test would be easily satisfied. There can be little dispute that through his representation, whether of HVI as a separate entity or as a division of AMCA, Mandel gained

---

[2] This claim appears contradicted by billing invoices showing that AMCA paid for these services. (Harris Decl., Ex. 1.)

14

confidential information as to HVI's operations and as to certain other trademarks that are at issue in this case. In addition, and again assuming that AMCA were to prevail on its underlying theory, the information gained through the representation would certainly be relevant to this action seeking to establish that HVI is a separate legal entity and had some of its trademarks infringed.

Moreover, it would not appear as if this is a case where the presumption of shared confidences could be rebutted. This case does not involve an attorney changing law firms and later he or his new firm is retained by an adversary of a client of his former firm. Instead, it would appear more akin to the scenario in *Analytica* were the firm itself changed sides. *Analytica*, 717 F.2d at 1267. In any event, the issue appears moot because Mandel admits that his firm has not provided screening mechanisms to prevent his involvement in this case. *See Schiessle*, 717 F.2d at 421 ("The *LaSalle* decision requires that when an attorney with knowledge of a prior client's confidences and secrets changes employment and joins a firm representing an adverse party, specific institutional mechanisms must be in place to ensure that information is not shared with members of the new firm, even if inadvertently.").

Neither of the parties address how a disqualification issue should be decided when its resolution is intertwined with the underlying merits of the case. The only method this court can conceive of is to rule in favor of disqualification. The court acknowledges that disqualification is a "drastic measure that courts should impose only when absolutely necessary," *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993), but at the same time any doubts as to the existence of a conflict must be resolved in favor of disqualification. *United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990); *LaSalle Nat. Bank*, 703 F.2d at 257. Since the issue of whether a conflict

15

exists depends in part on the underlying merits of the case, the only way this court can insure that conflict free counsel are involved in this case is to err on the side of disqualification. Therefore, Mandel and the law firm of Neal Gerber are disqualified from representing HVI in this action. AMCA's motion for disqualification is granted.

## CONCLUSION

For the reasons stated above, the third-party defendants' motion to dismiss is granted [#18] and the defendants' motion to disqualify Jed Mandel and the law firm of Neal Gerber & Eisenberg, LLP is also granted [#22]. This case will be called for status on September 23, 2004 at 9:30 a.m, at which time HVI should be prepared to appear by substitute counsel.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 30, 2004